Good morning. We have two appeals to rehear on bunk this morning. We're familiar with your cases. We've read your briefs. The authorities cited in your briefs. Obviously, with a rehearing on bunk, we're even more familiar with your cases. So you're going to have limited time this morning. Feel free to get straight to the heart of your argument. If you've saved time for rebuttal and you're finishing up an answer from the court, you won't lose your rebuttal time. But I ask that in the words of the chief when I first arrived at this time, to wrap it up. So our first appeal this morning is Sosa v. Martin County, Florida. Mr. Johnson? Good morning. The man is the court. The appellant has two main points on the case. First, the appellant's claim under both Rule 8 and the well-described Second Court in Twombly v. McFaul. Ruling in his favor at this stage falls in line with existing precedent, while ruling in an appellee's favor carries serious risks and requires finding far-fetched facts that should not be seen in general, let alone at the plea decision. The claim itself is also bolstered by Baker as well as existing precedent in this circuit and in other circuits. Second, Mr. Sosa's right to be free from over-detention, in this case, has been clearly established in this circuit since at least 1993 by Cannon v. Macon County, in addition to being an obvious violation of Mr. Sosa's 14th Amendment due process rights. But before exploring those points further, it's worth noting that there are two overarching principles at play here. First, is that this country's justice system was founded in part on the principle that it is better for 10 guilty people to go free than it is for one innocent person to be jailed, which is guaranteed and reflected in rights like the 14th Amendment due process rights. Second, is that David Sosa, who has a common name, was arrested on a 27-year-old warrant from halfway across the country with significant different identifiers, including Dave Berger. Well, counsel, the Constitution does not contemplate that no innocent person will be ever arrested, now does it? No, it does not, Your Honor, however. And so, and it is true that we would rather have nine guilty go free than an innocent person be convicted, but there's a big difference between conviction and a three-day detention based on mistaken identity, right? That is correct. However, the due process right is what guarantees the right, which is at issue here, of not necessarily being wrongly arrested in the first place. The issue here has nothing to do with probable cause, because the warrant itself, this Court has already determined, establishes probable cause. The issue is the extended nature of the detention for no real reason. Yeah, and the problem I'm having with your case is, notwithstanding whatever we may have said in canon, is that the Supreme Court precedent in Baker seems to me pretty clear that a three-day detention based on mistaken identity on a valid arrest warrant, which is precisely what we have here, does not state a claim for violation of the due process clause. Yeah, what am I missing? Yeah, Your Honor, I would respectfully disagree insofar as Baker did not create, and specifically did not create, a bright line rule for allowing three-day detentions in any case. Counsel, so that was one of the questions I had. What is the limiting principle that Baker stands for? I mean, it seems to me like the limiting, in other words, it seems to me that the limiting principle of Baker is not just randomly three days is not enough, because how would we know when is enough? So is it a totality of the circumstances kind of test that Baker stands for? Yes, Your Honor, and I have two more specific responses to that. The first is that Baker created the right and specifically limited the right in its reasoning when it said that the time frame for reasonableness is related to, quote, the procedures the state affords defendants following arrest and prior to detention. So that itself is a limiting principle, looking at what processes, what procedures are normally given to defendants over the course of their arrest and their detention. The second limiting principle is exactly what you said, is a totality of the circumstances case-by-case basis, which feeds directly into the first main point that I have, which is that this case is on a motion to dismiss. Almost all of the cases, if not all of the cases in the briefing and on the point that we brought up here before you today, were all decided on motions for summary judgment or after trials had already taken place. Can I ask you a question? I guess one thing I worry about a little bit from the totality of the circumstances perspective is that we're dealing here, I guess, with substantive due process, and the Supreme Court has told us time and time again that this is such a sort of a squishy concept. I think the Court has said that the markers are so hard to find that we ought to be very careful about extending substantive due process rights. And it just strikes me that given what, you know, as the Chief describes, the Supreme Court said in Baker, shouldn't we be pretty reluctant about getting into all of this sort of case-by-case line drawing? It just seems, that seems to me evidence that maybe this isn't something that the Constitution concerns itself with at all, and this is just a tort case. Your Honor, again, two responses to that. First is that that Baker itself implied and considered the fact that this would necessarily be a case-by-case issue by tying into the defense, the procedures that the state affords the facts, because it's going to be different state-by-state. So I guess my question then is like, how do we know? How do we know? On a case-by-case basis, is are we just kind of like, you know, trying to decide if this what are the markers? The first marker is what, what procedures are normally available and what procedures were given. That, that first comparison is, is the first marker of, you know, what, what could be expected, what should be expected. And in this case, we actually have a clear marker in the form of Mr. Sosa's first arrest. It only took them three hours to finger... Can I ask you, can I ask you a question about this issue about the procedures that the state affords? So in paragraph 44 of your amended complaint, you say that he had, Mr. Sosa had an initial appearance in front of a magistrate judge the day following his arrest, and then you say that the jailer or jailors prevented him from explaining to the judge that he was the wrong person. Kind of two questions on that. One, it seems like he got a pretty good procedure because he got appearance before the magistrate judge the day after his arrest. And two, it seems like if anybody committed a constitutional tort here, it was this jailer who prevented him from explaining to the magistrate judge that he was the wrong person. What, what do you say about that? Your Honor, I have two responses to that. The first is that while he was, of course, given the opportunity to be heard before the magistrate judge, it was effectively denied, as you noted, by the fact that he was made to believe that it was a crime to speak to the magistrate judge. So while the procedure was, in a technical sense, afforded, it was not, it was not effectively given in the same way. And my second response to that is that we're looking for the procedures that are normally afforded to defendants. This could be one of them, but his first arrest shows that fingerprinting is one of those procedures that is normally afforded. And in, in his first arrest and in any other arrest, the fingerprinting happens first. So that, and, and I just, I had a little bit of a problem understanding that because I thought your response to either Judge Rosenbaum or Chief Judge Pryor was that this tort, the undue detention, sort of happens after a long period in, in detention. And it seems like that argument, which as a practical matter makes sense to me that you would fingerprint people and find out who they are, but it seems like that argument suggests that the, the constitutional problem happens like an hour or so after he's arrested. Your Honor, I understand your concern in, insofar as, as it relates to some of the questions that we've already heard from, as you mentioned, Judge Rosenbaum and Chief Judge Pryor, because, you know, the, the issues, of course, what, what's the limiting principle, what's, what's the number. The fact of the matter, two facts to consider in this case are first that this court on a motion to dismiss, on a motion to dismiss does not need to determine with specificity what the specific line is of what is too far. It can just say that in this case, in order to simply state a claim and get to discovery, that three days is too much. So, this is qualified immunity? Absolutely. So, we, we have to satisfy ourselves that there's been an alleged constitutional violation and that it was so clearly established that the officer was on notice of it, right? That is correct. This isn't just a pleading standard issue, is it? The pleading standard, as it relates to the facts and the constitutional violation itself, is clear and, and the determination of whether or not this could, not, not necessarily that this always has to be a constitutional violation, but on the facts pled, you know, assuming that, and this is going on fondly here, on the assumption that all the allegations are true, even if doubtful, the complaint should proceed, quote, even if it strikes a savage edge, the recovery is very remote or unnecessary. So, the, the issue of the violation itself and whether or not three days constitutes the violation is clearly met under the pleading standard. That is directly governed by the pleading standard. As for qualified immunity and what is clearly established, that's when we look to the overarching principles and the guidelines that are set forth in Comparant-Baker and Comparant-Cannon. I have a question getting back to Judge Newsom's question about totality of the circumstances. Is totality of the circumstances routinely used, for example, in Fourth Amendment issues, even when there's qualified immunity? Yes, it is, Your Honor, and in excessive force cases, a very clear example of that, where it looks at the circumstances of why an officer is interacting with a suspect, how quickly it was escalated, what force is used, all that kind of stuff. That is definitively totality of the circumstances. And so, if Baker is understood as imposing a totality of the circumstances requirement, especially because it says, obviously, one in respondent's position could be detained, could not be detained indefinitely in the face of repeated protests of innocence, even though the warrant under which he was arrested and detained met the standards of Fourth Amendment, and then it also says that a detention of three days over a New Year's weekend is not enough. If, in fact, totality of the circumstances is what Baker stands for, which it seems like perhaps it does, this would not be the only context in which we are required to review a totality of the circumstances test in order to determine whether qualified immunity applies. Is that right? That is correct. And a couple of things that I would add to that are, when this totality of the circumstances test has been applied, in other cases, we can look at the Ninth Circuit in Lee versus the City of Los Angeles, where it said that even one day of a detention on a misidentified warrant, just as we have here, was in violation of Baker on this very principle. And this court in Case versus Esslinger, the site there is 555 F. 3rd, 1317, in 2009, held that holding a detainee for seven hours after bond was met was too much and violated. Can I ask you another question about paragraph 44, which goes to the point you just made? So here he did have an appearance in front of a magistrate judge. You say in paragraph 44 that he was prevented from explaining this to the magistrate judge. What if he had had the appearance in front of the magistrate judge, had had the opportunity to explain to the magistrate judge that he was the wrong person, and the magistrate judge had just said, I don't believe you, and found that there was probable cause to keep him in prison or in jail? Would there still be a due process violation, a substantive due process violation in that circumstance? I mean, that circumstance is, of course, inherently different, and it would likely not implicate due process because of the independent intermediary doctrine, which of course is not applicable here. Okay. So I could use you to explain that to me. In what way is that meaningfully different for purposes of overdetention, for your overdetention claim? Right. So in that instance, what you would have is an actual review, an actual check on whether or not the continued detention is justified. What we're saying here is that that initial check, nothing was done over the course of that three days. Actually, let me ask you a question about that because, I mean, it seems to me that, you know, the magistrate judge isn't going to be doing fingerprinting herself, right? So, and we're talking about, I mean, you sued Sanchez and the jailers. You didn't sue the magistrate judge, and you sued Sanchez and the jailers because, according to the complaint, your client was kept in jail for three days and three nights, and even though your client told the jailers about his past experience in 2014, that he wasn't the person, et cetera, they did not, and even though the jailers told him they would look into it, they did nothing to check into it. And so, what difference does it make if the jailers still do nothing to check into it if he appears before a magistrate judge and the magistrate judge, who isn't going to be involved in fingerprinting anyway, just says, well, it'll, you know, talk to your lawyer about it. Why does that matter to your claim? Why does that matter to your over-detention claim against the jailers? So, it wouldn't necessarily affect, and if I may answer your question briefly. It's a long question, so take your time. Thank you. Could I, could I, did you sue the jailers? I just, or did you sue the deputies? Okay, which one is the jailer? I'm sorry. That is Sanchez. Okay, thank you. Yeah, I'm sorry. Um, so, it, it would not necessarily, as, as you indicated, directly implicate the, um, liability attached to, you know, the, this court, given those facts, and of course, this is not what's before the court, so I would like to, uh, address it fairly quickly. It would not affect the determination of the timing between the time that he was arrested and processed and the time that he saw the magistrate. You know, that, that's when there would be a lot more questions, legal questions about the inter, independent intermediary doctrine and the effect of the magistrate judge. But the, the claim against the initial jailers in between the time of the arrest and the initial detention and the, uh, hearing for the magistrate, that would then become the question. Um, but, uh, you, you brought up one point that I wanted to, uh, leave this court with, which is that nothing was done over the course of three days. That's exactly what brings this into the ambit of Cannon. What Cannon said is that even if deputies, even if, uh, law enforcement, the office, the officials, have every reason to believe that the person that they have in front of them is the person on the warrant because of some sort of internet, that they can't do nothing. Um, we're going to hear, do I take it that your co-counsel is just going to handle the rebuttal? That's correct, Your Honor. Okay. All right. So, um, let's hear from Ms. Branko. Thank you. Good morning. Good morning. May I please report? Um, I appreciate being here in front of everyone in person. It's kind of a treat, actually. Um, one thing I just want to address very briefly before I forget was, uh, plaintiff's appellate's counsel just said that nothing was done for three days. And again, obviously, Your Honors are confined to the four corners of the complaint, but I did want to draw attention to paragraph 47 of the complaint that, uh, is in contravention to what counsel just said. And in paragraph 47, plaintiff alleges that despite the defendants looking into David's problems by informing their supervisors and the sheriff, no files or other system was created to prevent David and those like him from being wrongfully arrested. And the reason I just mentioned that is the complaint itself alleges that Daphne Sanchez, who was the jailer who was personally named in this case, didn't do something. I know that you're going to convince me that. Oh, go ahead. Sorry. I don't know that you're going to convince me that everything was handled appropriately here. But under, under Baker, it seems to, that is not a great sound. It seems to suggest even that maybe the real remedy is a speedy trial claim for indefinite detention. It says, obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence, even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. And then it goes on to talk about the speedy trial. Do you think it has to be, a detention like this has to be so lengthy that there's a speedy trial problem before there's a remedy? Or do you think that Baker allows for remedies sometime before that period? Well, it's interesting because I've been reading and re-reading Baker a lot lately in preparation for today. And as much as we all would like a bright line, easy to plug in answer, I think it's not that easy. The answer to your question is maybe, you know, it could be tied to that. I know that Baker, the United States Supreme Court said in Baker that, you know, the length of time very well should be tied to the process that's due. Doesn't it seem problematic if it's, if it's tied to the speedy trial period? Because, I mean, constitutionally, you know, you're not entitled to, your rights aren't violated until maybe a year passes constitutionally, right? So, I mean, you're not suggesting that a simple misidentification, which could have been fixed by simply running Mr. Sosa's fingerprints, that he would have to sit in jail for a year or up to a year. Are you suggesting that that is the limiting principle that we take from Baker? Because that, that seems problematic. No, I would not suggest that. Okay. So, but there is a limiting principle that we take from Baker, right? I mean, it can't be the case that the Supreme Court just said, well, we randomly picked three days is not enough. I mean, there must be a reason that they picked three days, right? So, there has to be a limiting principle. You would agree with me on that? Well, I mean, they picked three days because that was what happened to Lizzie McCullen. Yes, but. Citing the facts of the case. Right. Yes, but what I'm saying is there has to be a reason that they thought three days wasn't enough, right? I mean, they couldn't have just said, well, it feels like three days randomly isn't enough, right? There's a reason, there's a limiting principle that the Supreme Court applied to determine that three days wasn't enough. Three days is the outcome of applying that rule. Three days is not enough in the case, is the outcome of applying that rule, but it's not the limiting principle itself. Would you agree with that? I don't think it's as simple as that. You know, ultimately. Well, I mean, there are two choices. Either, either it's a random number of days or there's a limiting principle that was applied to determine that in the case of Baker v. McCullen, three days was not enough. Now, maybe it's because speedy trial hadn't run. And so, speedy trial is a lot less than a year. And so, that's why three days wasn't enough. But that doesn't seem like that could be right either. There must be some other limiting principle that the Supreme Court applied in Baker v. McCullen to determine that the detention there was not enough, right? What if the limiting principle, if there was one that Baker followed, was more to do with the 14th Amendment and what is substantive due process? What is, you know, what is a violation of the 14th Amendment as opposed to the 4th Amendment and what was interesting about this case? But why, again? Why, why, what is the rule that we take to know when somebody is detained for a certain period, you know, how about six days under the same circumstances as Lenny McCullen? How about two years under the same circumstances as Lenny McCullen? How about two weeks? What is the principle that we take to determine whether a certain period is enough to violate the 14th Amendment rights? Well, if we're talking about the 14th Amendment as opposed to the 4th Amendment. We are. I mean, that's what we're talking about. Both have come up in the cases, this case. But yes, if we're focusing on the 14th Amendment, U.S. Supreme Court has said repeatedly that, you know, it's an area of the law you should be tread, should be lightly treading. That it's not something that you should be easily finding 14th Amendment violations. Okay, but what is the principle? I understand what you're saying in general, the sort of things that you've said about the 14th Amendment. But there has to be a principle or a rule that we apply to determine whether it's enough and whether it's not enough. And my thought is that there are indications in Baker that they are applying a totality of the circumstances rule. Maybe you disagree with that. If you disagree with that, I wonder what you think the limiting principle is. Well, I know the 4th Amendment, totality of the circumstances, as the Court has already mentioned, and in this particular instance, because the warrant that Mr. Sosa was arrested pursuant to was facially valid, unlike the instance in Cannon. And Mr. Sosa chose in his... Cannon, the arresting officer, arrested because of a hit on NCIC. And the arresting officer found probable cause to arrest based on the NCIC hit and then passed off Cannon to the jailer who did not engage in any other activity to determine that Ms. Parrott was in fact the person who was being sought. So it seems kind of similar. Except the difference was in that case, in Ms. Parrott was held for seven days, which was twice as long as the three-day detention that Mr. Sosa... Okay. Could I try to get at the issue from a different perspective? We're all trying to figure out what Baker stands for and what limits, if any, there are and the rationale. Part of the problem, I think, for me is that Baker doesn't really explain too much about the why. It gives you the result, but it doesn't really tell you much about the why. So let me give you a hypothetical divorce from the facts of this case and tell me what you think about it. Mr. Sosa gets arrested every Friday of a given month at a sobriety stop randomly held by the sheriff's office. By luck of the draw, he gets arrested by the same police officer every Friday night after work. Gets taken to jail, protests his innocence, says, I'm not the David Sosa you're looking for. Same jailer tells him, you saw me last week, it's not me. We've been through this dance before. They're like, go to your cell. On Monday, they do the fingerprint, he gets released. Is there any constitutional claim against anybody in that hypothetical? So four straight three-day detentions every weekend of a month. Same police officer does the arrest, knowing the claim of innocence and knowing that he ultimately gets released. Same jailer takes him in, doesn't do fingerprinting, although knowing that it's not that Mr. Sosa. Is there any constitutional violation that Mr. Sosa has suffered in that far-fletched hypothetical? Well, I think to answer your question, Judge Jordan, looking at Baker and understanding from what we do read that the 14th Amendment has to do with getting process that's due in terms of whether there's going to be a constitutional violation or not, and it's not a font of tort law. As much as the practical part of me or the emotional part of me would say that scenario would state a claim. Isn't there, I mean, isn't your answer to Judge Jordan's question that at some point there's a false arrest claim if you continue to arrest the same person over and over again knowing that they are not the person who is subject to the warrant? Yeah, you can't claim reasonable mistaken identity on the second go-around if it's the same officer and the same person. Can you? Except that, if I can go back to the hypothetical I created, the jailer is not the one arresting in my hypothetical. He's just keeping Mr. Sosa. So there's no false arrest claim available against the jailer. Maybe the arresting officer gets hit with a false arrest claim, but the jailer isn't arresting anybody. He's already been arrested. He's been taken there for custody purposes, and so my question is whether or not there is any constitutional violation that you believe Mr. Sosa has suffered in that scenario. Under your fact pattern, I would say no. Okay, so no matter how far you extend it out, right? So if it happens for three months, 12 arrests, three days each, still nothing. You're saying the jailer, the same jailer? Because I want to make the hypothetical hard for you. But yes, yes, so it's the same, it's the same jailer. And you know, I'm not, I'm not doing this, I'm not doing this, I'm not doing this to be cute. I want to, in the same, in the same way that we were testing your colleagues' views about where Baker stands and what its limits are, I want to know what limits, if any, there are to your position in your interpretation of Baker. And maybe your answer is, listen, it doesn't matter how many times it happens, there's no 14th Amendment violation. Is that the answer? Yeah, I think that is my answer. Does that mean, though, that there's no Fourth Amendment violation? I mean, if the, if the, if the jailer, it's separate from the arresting officer, but the jailer knows this is the same guy, the same guy we had to release last week. Because it's a mistaken identity. He doesn't have probable cause to detain him, arguably, does he? It would be a reasonable mistake at that point. But a reasonable mistake doesn't go into, reasonable mistake may go into the liability of the officer. It doesn't necessarily go to whether or not the person has suffered a violation. Right? The Fourth Amendment with the warrant issue, and when Rodriguez versus Farrell, this court, the critical identifiers and that sort of thing, I think it would go to that part of So your point is, if there's, there's a problem, it's a Fourth Amendment problem, not a 14th Amendment problem. Well, there is a violation. Because you told me there wasn't. Perhaps under the Fourth Amendment, perhaps. It might be the common law tort analog for that detention in the face of where the jailer knows there's not probable cause, is the false imprisonment common law tort analog, right? Can I ask you to address? Let me just ask this one question, just to follow up on Judge Jordan's question. We could determine, could we not, that there was a 14th Amendment constitutional violation, but that it was based on Baker versus McCollum. But it was not clearly, based on the facts in this case, not clearly established. Could we not? Well, I would respectfully disagree that based on what the law is, that would be an appropriate finding. Aside from any hypothetical. It would be inappropriate to say it wasn't clearly established, whether there was a violation or not. Well, if it was, first of all, Judge— We don't have to do that, though, do we? No, we don't. We could just skip to that, couldn't we? Yeah, you don't have to decide one or the other. I think it was Pearson that said you no longer have to do step one. So I think Judge Wilson's question is, couldn't we at least just say, whatever else you might want to say about Baker and the rest of it, it wasn't clearly established. This officer wasn't on notice. Absolutely, you could do that. Would you have to overrule Cannon to do that? No, I don't think so. What does Cannon give an officer reasonable notice of? If you take Cannon on its face and accept it for all it's worth. For the guy who had been on the street or in the jail, seven days versus three days is a big difference. And that would avoid having him arrested on Friday again, same circumstances. He would then be able to state a claim upon which relief could be granted if he was arrested again on Friday and not released until next Monday. Again, perhaps as a matter of tort law, but not under the 14th Amendment, based on Baker and what it stands for and substantive due process is not typically found just as a matter of course. It's got to be something more than a tort, false imprisonment. So would you please address for me paragraph 44, which Judge Brasher mentioned earlier. I'm pretty skeptical of all of substantive due process. I feel like we're making stuff up as we're going along. But in paragraph 44, it seems to me like, is there not like, I don't know, is there not a violation of procedural due process if the jailer, as we have to take as fact, prevented him from engaging in the process that was available to him? He has a hearing before the magistrate and he wants to protest his innocence and the jailer says, shut up or else. Why isn't that like procedural due process? I don't know. Well, the first appearance, the point of that isn't for the accused to start having a conversation with the judge. It's more about the judge looking at the paperwork and determining whether or not there was probable cause for the arrest. Based on facts as fled by Mr. Sosa's counsel. So in other words, it's not a procedural protection? I mean, that's what you've just said. The first appearance. So Sosa, you'll just have to enlighten me. So a defendant has no right to speak at the initial appearance? I suppose he has a right to speak, but my understanding is that's not the point of. The point, I think, is to ensure that there's probable cause to keep someone in jail, right? Isn't the point of the initial appearance to prevent this exact thing from happening? Well, it's to look at whether or not there's probable cause to hold the person. And in this case, there was. Based on the warrant, it was facially valid. And Mr. Sosa isn't attacking that. But there had been a probable cause to arrest. But at this hearing, he could show that there wasn't probable cause to arrest him. There was probable cause to arrest a guy named David Sosa, but not necessarily this guy named David Sosa. They didn't even have the same date of birth. Different dates of birth. That was pled kind of softball. I know that the court below mentioned, and I think even this court, in its opinion, had mentioned that when the facts aren't pled very specifically, they don't have to assume anything about them. Particularly, they can reject them. And the issue in one of the cases was the difference in the dates of birth was 12 years. I think it was the Cannon case. Big difference between somebody who's 30 and 42, or 20 and 32. Whereas here, all that was pled was just kind of different date of birth. And I know Judge Middlebrooks- And no tattoo. There were other characteristics that were different, correct? That he told the officer. It's not me. It's not the same date of birth. It's not the same height. That's correct. Although this court has already said, too, that there's the critical identifiers, and then there's a lot of other things. Tattoos, eye color, things that can be changed because the warrant was so old. A weight difference. Counsel, can I- Yeah, go ahead. I'm sorry. I just wanted to clarify two quick things because I think we're getting a little bit far off from where we were. Number one is, the only claim that we're here on, let me ask it this way. He didn't bring a procedural due process claim, did he? At any point, ever? I don't believe so. There's only three claims that were interpreted by the district court that the panel decided, and then there was only one claim here. The three were a false arrest claim, an overdetention claim, and then a Monell claim holding the county liable and the sheriff liable, correct? That's correct. Okay. So there is no procedural due process claim, correct? And then I thought I heard your opposing counsel, and you're certainly right about the panel decision, but I thought I heard your opposing counsel say, we're not here on whether there was probable cause for the initial arrest. We're only here for what happened once he's booked into the jail and what happened there, correct? Correct. So there's no question here about probable cause, however thin it may have been, that he was the David Sosa who was arrested, correct? Correct. The way it was planned. The only thing we're here is, once the jail is informed by Mr. Sosa, I am not that David Sosa, what obligations there were under the procedural under the substantive due process clause for the jail, correct? That's what we're here for? Correct. And that's what Baker speaks to. Okay. If I could just ask you, Baker v. McCollum, how much should we take into consideration? That's a pretty old case, 1979 case. And technology has developed significantly since 1979. It was before the internet. And I mean, I wonder, I mean, it seems as if in this case in 20, when this case was decided, the identification was immediately verifiable and it may not have been in 1979. So how much should we factor that into our consideration of this case? Well, number one, you shouldn't confuse technology, which may be best police practices with what the constitution requires. And also number two, you're forced to look at the four corners of the complaint. And other than the plaintiff pleading that he was fingerprinted in 2014 and then released, and fingerprinted and released in 2018, otherwise the complaint is silent as to anything else to do with the fingerprint. So I don't think it plays much of a role at all. I see my time is, it's fine, expired. If you want, okay. We'll hear now from Mr. Klenin. Thank you. Good morning, your honors. It is a pleasure being here. I generally practice in the 5th Circuit where I run in front of that court on 60 or 70 or 80 occasions. And I'm glad to see here in the 11th Circuit where the 5th and the 11th were together a long time ago. I just wanted to clear up a couple of things about what the opposing counsel has mentioned. First of all, regarding the paragraph 47, that was mentioned by opposing counsel, where it says despite the deputies looking into David's problems by informing their supervisors, that is referenced to after this is all over. In other words, what we're saying there, that was to support the Monell claim. Because once he was released, we thought, well, did somebody go around and try to fix this so this doesn't happen again? So that number 47 has nothing to do what happened prior to his release on the second occasion. Also, I'd like to bring up that this was on a motion to dismiss, and there's a lot of problems with that. When you go to this jail, remember it's the same jail, so when Mr. Sosa is telling the jailers and everybody, I was here before, all they would have to do is get on their computer, click, click, click, oh, Frank, that guy was here before, and he was let out in three hours. Why would he be let out in three hours on a crack cocaine conviction out of Harris County? So that would have told them right there, let this guy go. That is the same David Sosa. What he's saying is correct. So here's the problem that I'm struggling with. It seems to me that it's inexcusable how Mr. Sosa was treated, and that faster action wasn't taken, but it's not clear to me that inexcusable means unconstitutional, right? They're very specific things, and this seems pretty close to what happened in Baker, and perhaps there should be a remedy under statute or something, but I have a hard time seeing how this is different enough from Baker to get to a constitutional remedy for what seems to be a legitimate problem. I respectfully disagree with that for many reasons. One is the technology that is brought up. In the past, you would have to look at the past and look up records and look at paperwork, and there might even be several clerks looking into this concept. Here, it's a snap of a finger or the touch of a couple keystrokes. That's why we need, because this was a motion to dismiss, we need to get back to the court so we can develop the case law. Counsel, would the technology go to the totality of the circumstances? In other words, technology didn't exist in 1972, even though the case is from 79. Lenny McCollum was arrested in 1972. Would the technology go to the circumstances as to why it would take three or four days to release him over a New Year's holiday weekend? Would that go to the totality of the circumstances under Baker? Yes, the totality of the circumstances here greatly assists Mr. Sosa because of the technology. I mean, 1970s or even 1990s, that's dinosaur stuff. Nowadays, we just touch a button so we get the information from courts far away. When I became a lawyer, I had to rush down to the federal courthouse and put paper into the slot or go in front of the clerk. Now, I just go, I sit at my desk and I go, click. And that's the same thing. But how does that go to Judge Grant's question? You're definitely making her first point, which is the technology certainly makes this an improper behavior on the part of the jail. But how does the technology lend itself to a constitutional violation? Well, for one, it's the obviousness of it. I think that on motion to dismiss, some of these factors are so obvious that we need to go back to the court and even explain them, show them more. But in our complaint, we do mention court procedures. And that's another way that... Well, doesn't the obviousness go to some extent to whether the officer had fair notice, whether that alleged constitutional violation was so clearly established that he had fair notice that he would not enjoy qualified immunity? And if so, where in Baker do you get that? Well, Baker stands, I think, more for the proposition the more the body of the overlying principles. And that is what we like to do. Can I ask you to address Judge Luck's question, his series of questions to opposing counsel about what exactly your claim is? The district court said that you were making three claims. I'll tell you, I've looked at your complaint. I don't understand what you're saying. I mean, I really don't. The district court said that you were alleging a false arrest claim, an overdetention claim, and a Monell liability claim. What, how do you see your claim? Is it substantive due process? Is it overdetention? What exactly are you alleging? Well, of course, we were here today in order to narrow the issue. So that's what we went through before. And that issue is, did David Tosa possibly allege an overdetention in violation of his 14th Amendment substantive due process rights, correct? That's the issue, the first issue we asked you to brief, right? Yes, sir. And then if it was a violation, was it clearly established, right? That's correct. And I just wanted to also mention that magistrate judges in federal settings, all they do is listen to the prosecution. And if you listen to the prosecution, then if David Tosa were to pipe up and say, oh, that was me, he's going to go, okay. Okay. Are there any other questions from the court? Because I think you're well over your time, Mr. Klinen. Thank you. We're going to move to our next case.